[Civil No. 904.   Filed March 30, 1906.]

[85 Pac. 477.]

M. D. SCRIBNER, Defendant and Appellant, v. WILLIAM K. MEADE, Plaintiff and Appellee.

1. TRUSTS—CONSTRUCTIVE TRUST—WHAT SUFFICIENT TO CONSTITUTE—FRAUD.—In an action to establish a constructive trust, fraud actual or constructive must be found, and a mere verbal promise to purchase and convey with a subsequent refusal to convey is not sufficient.

2. STATUTE OF FRAUDS—VERBAL PROMISE TO PURCHASE AND CONVEY—REV. STATS. ARIZ. 1901, PAR. 2696, CONSTRUED.—A verbal promise by defendant to purchase real estate and convey a certain interest therein to plaintiff is unenforceable because not in writing as required by paragraph 2696, *supra*.

3. TRUSTS—CONSTRUCTIVE—EVIDENCE — SUFFICIENCY. — Facts showing that plaintiff and defendant had agreed to purchase certain real estate, each to have a half interest therein; that plaintiff had on deposit with defendant a large sum of money, and told defendant that payment for plaintiff's share could be made from such funds; that defendant never agreed to so use the money; that defendant purchased the property, taking the title in his own name, and paid the full purchase price from his own funds; that defendant offered to deed plaintiff a half interest but plaintiff refused to accept the deed; that thereafter plaintiff sent defendant a check to make the sum in defendant's hands equal half the purchase price of the land, and demanded a deed,—are not sufficient to charge defendant with a constructive trust in favor of plaintiff.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Cochise. Thos. Armstrong, Jr., Temporary Judge. Reversed.

Statement of facts:—

William K. Meade brought this action, seeking to have the defendant, M. D. Scribner, declared to be a trustee for the plaintiff of an undivided one-half interest in certain real estate. The complaint alleged that the title to the property in question, being in one Bentley W. Warren, as trustee, the said Warren sold the property for the sum of fifteen hundred dollars to the plaintiff and the defendant, and by deed conveyed the same to the defendant in fee; that the plaintiff and defendant paid for the property in equal shares, to wit: seven hundred and fifty dollars each; that the title was for convenience taken in the name of the defendant upon the express understanding and express agreement of the defendant that he would on demand convey one equal undivided half thereof to the plaintiff, and that the defendant, though often requested, has refused and still refuses, to perform his said agreement. The plaintiff prayed that the defendant be decreed to be such trustee, and be required to execute and deliver to the plaintiff a deed for one half of the premises. The answer was a general denial of all the facts alleged in the complaint. The court found that prior to April 1, 1902, Warren was trustee of the property; that prior and subsequent to such date the defendant was in possession of a considerable sum of money belonging to the plaintiff, and acted as the plaintiff's agent in the disbursement of the same; that prior to such date the plaintiff asked the defendant, as agent of the plaintiff, to purchase an undivided half interest in the property for the plaintiff, and to pay therefor out of the money of plaintiff then in defendant's hands as agent of the plaintiff, there being there sufficient money for such purpose, and to take the title in defendant's name, and that at that time the plaintiff directed the defendant to make the said purchase; that pursuant to such direction of the plaintiff, and acting as plaintiff's agent as to half of such property, the defendant purchased the property and took the title in his own name, one half thereof in his own behalf, and one half on behalf of the plaintiff, as his agent, and that the plaintiff directed the defendant to use for the purchase price of his half of the property money of the plaintiff in the defendant's hands as agent; that on an accounting had between the parties on September 5, 1903, of the money held by defendant as agent of

the plaintiff, defendant informed the plaintiff that he had not applied the money of the plaintiff in payment of the half interest in the property as directed; that it further appearing upon such accounting that the sum then in defendant's hands as agent of the plaintiff was not sufficient to pay for the plaintiff's one-half interest in the property, but that there was a balance due the defendant, the plaintiff offered then to make good such balance, and sent defendant a check therefor, which defendant returned to plaintiff; that prior to the commencement of the action, plaintiff, at a time when he had in defendant's hands applicable thereto sufficient funds to pay the full agreed purchase price therefor, duly demanded of the defendant that defendant execute to him a deed for an undivided half interest in the property.

The court found, as conclusions of law, that the defendant purchased a half interest in the property for and on behalf of the plaintiff, and acting as his agent, and that the defendant is now estopped from denying that he made payment therefor out of the plaintiff's money and thus defeat plaintiff's right thereto; that the defendant took title to half of the property as agent of the plaintiff, and holds the same in trust for the plaintiff, and that as there is not now sufficient funds of the plaintiff in defendant's hands to fully reimburse defendant for plaintiff's share of the purchase price, plaintiff ought, in equity and good conscience, to pay to the defendant the balance sufficient to complete such purchase price, to wit, $386.54; and that upon deposit thereof with the clerk, the defendant be required to execute a deed to the plaintiff for an undivided half of the premises. The judgment followed the conclusions reached by the court. From such judgment, and the denial of a motion for a new trial, the defendant has appealed.

W. P. Miller, and Eugene S. Ives, for Appellant.

The agreement alleged in the complaint would be within the statute of frauds. *Buhl* v. *Stepiens*, 84 Fed. 922; *May* v. *Sloan*, 101 U. S. 231, 25 L. Ed. 797; *Dunphy* v. *Ryan*, 116 U. S. 491, 6 Sup. Ct. 486, 29 L. Ed. 703. The agreement alleged is one for the sale of lands, and within the prohibition of paragraphs 721 and 2696, Revised Statutes of Arizona, 1901, and unenforceable. *Levy* v. *Brush*, 45 N. Y. 549; *Dunphy* v.

*Ryan, supra; Spencer* v. *Lawton,* 14 R. I. 495; *Roberts* v. *Ware,* 40 Cal. 634; *Howland* v. *Blake,* 97 U. S. 624, 24 L. Ed. 1027; *Wetmore* v. *Neuberger,* 44 Mich. 362, 6 N. W. 637; *Glass* v. *Hulbert,* 102 Mass. 24, 3 Am. Rep. 418; *Payne* v. *Patterson,* 77 Pa. St. 134; *Nash* v. *Jones,* 41 W. Va. 769, 24 S. E. 592; *Fowke* v. *Slaughter,* 3 A. K. Marsh. 56, 13 Am. Dec. 133. Such a contract is as much void in equity as at law. *Buhl* v. *Stephens,* 84 Fed. 922; *May* v. *Sloan,* 101 U. S. 231, 25 L. Ed. 797. Even though the facts in the case be held to create an implied agreement or trust, it is unenforceable. 2 Story on Equity Jurisprudence, sec. 1201a; *Spencer* v. *Lawton,* 14 R. I. 495, cited in note to *Botsford* v. *Burr,* 2 Johns. Ch. 405, (L. Ed. 427). If any trust can be established and enforced in this action, it must be one resulting by operation of law from the payment of the purchase price of the land by the plaintiff alleged in the complaint herein. But to estab- lish such a trust, the evidence must be clear, strong, unequivo- cal, and unmistakable, and it must establish the payment by the alleged beneficiary beyond a reasonable doubt. *In re Stanger,* 35 Fed. 239; Pomeroy's Equity Jurisprudence, sec. 1040; *Woodside* v. *Hewell,* 109 Cal. 481, 42 Pac. 152; *Pool* v. *Thomas,* 10 Ky. Law. Rep. 92, 8 S. W. 198. It requires an actual payment of the purchase price, as a part of the original transaction of purchase, to enable the court to decree a result- ing trust. Pomeroy's Equity Jurisprudence, sec. 1037; *Olcott* v. *Bynum,* 17 Wall. 44, 21 L. Ed. 570; *Ducie* v. *Ford,* 138 U. S. 587, 11 Sup. Ct. 417, 34 L. Ed. 1091; *Nickerson* v. *Nickerson,* 127 U. S. 677, 8 Sup. Ct. 1355, 32 L. Ed. 319. No subsequent or entirely independent conduct, intervention, or payment upon the part of the plaintiff can raise a resulting trust. Pomeroy's Equity Jurisprudence, sec. 1037. The pos- session by the defendant of trust-funds, namely, the moneys of the plaintiff, held by him as bailee, raises no presumption of the use of such moneys by the defendant in the purchase of the land. *Ferris* v. *Van Vechten,* 73 N. Y. 119. Even though there were such agreement as alleged, it would be void and it would not be fraud on the part of defendant to refuse to perform such an agreement. Pomeroy's Equity Jurispru- dence, sec. 1056, and cases cited in notes; *Purcell* v. *Miner,* 4 Wall. 513, 18 L. Ed. 435; *Dunphy* v. *Ryan,* 116 U. S. 491, 6 Sup. Ct. 486, 29 L. Ed. 703.

Flannigan & Flannigan, Thos. F. Wilson, and Kingan & Wright, for Appellee.

The statute of frauds and paragraph 2696 of the Revised Statutes of 1901 are inapplicable to this case. *Heard* v. *Pilley*, L. R. 4 Ch. Ap. 548-552; *Cave* v. *Mackensie*, 46 L. J. Ch. 564; *Rose* v. *Hayden*, 35 Kan. 106, 57 Am. Rep. 145, 10 Pac. 554; 15 Ency. of Law, p. 1139.

KENT, C. J. (after making the foregoing statement).— The complaint in the action alleged a payment by the plaintiff of his half of the purchase price of the property, and an express agreement on the part of the defendant to convey to the plaintiff a half interest therein. Neither the evidence taken in the case, nor the findings of the court support the allegations of the complaint in this regard; nor do facts appear in the record or in the findings of the court which show such representations, acts, or conduct in regard to the premises as would justify the application of the doctrine of equitable estoppel. The trial court seems to have applied either the doctrine of equitable estoppel, or to have concluded that, by the action of the parties and the premises the defendant, as the agent of the plaintiff, was impressed with a constructive trust in favor of the plaintiff, his principal. This latter theory is the one on which the appellee seeks to uphold the judgment in this court.

There is no substantial conflict in the evidence. Stating it as favorably as possible for the plaintiff, it appears that Meade and Scribner were old friends, living together in the same house, and had had various business transactions together. Meade had on deposit with Scribner some five thousand dollars, against which Meade drew from time to time, Scribner acting as Meade's banker in this regard. The property in question belonged to Meade's wife, being held in trust by Warren. Scribner, who was the lessee of the property, had held an option to purchase the property. The property was offered to Scribner by Warren, the trustee, for fifteen hundred dollars. Scribner and Meade had several conversations about a prospective purchase of the property and its value, and it was agreed between them that the property should be purchased for fifteen hundred dollars, each to have a half interest. At that time Meade had on deposit with Scribner

about four thousand dollars, and Meade told Scribner that he could pay for his (Meade's) half interest out of the funds in his hands. There is no evidence that Scribner ever agreed so to use Meade's money. Scribner purchased the property for fifteen hundred dollars, taking the title in his own name, but paying the full purchase price himself, and not any part thereof with Meade's money. Scribner took the deed in his own name, and after its receipt told Meade thereof, and offered to deed Meade a half interest. Meade asked, however, to have the matter remain in abeyance, and did not accept the deed, and no deed was ever given him. At this time Meade and Scribner were friendly, and it is apparent that up to this time Scribner intended, in making the purchase, to allow Meade a half interest therein. Matters were allowed to remain in this state for a year and a half, Scribner being in possession of the property and expending money thereon. Differences having then arisen between them a settlement of Meade's money account in Scribner's hands was had, when Meade learned, as he claims for the first time, that Scribner had not used any of Meade's money in the purchase of the property. On such settlement it appeared, however, that Meade had checked against the fund in Scribner's hands until it was reduced below the sum of seven hundred and fifty dollars, which was half of the purchase price. Meade thereupon sent Scribner a check for the balance, sufficient to make the sum in Scribner's hands equal the amount of seven hundred and fifty dollars, and demanded a deed to a half interest in the property. Scribner returned the check and gave no deed. Meade then brought this action. Upon such a state of facts, was the district court right in its conclusion that Scribner in his purchase of the property acted as Meade's agent as to the purchase of one half thereof, and that as to such half Meade was entitled to a conveyance thereof upon his payment into court for Scribner's benefit a sum sufficient to cover half of the purchase price?

It is apparent that there is a wide variance between the pleadings and the proof. The complaint alleges a payment by Meade of half of the purchase price, and an express agreement on Scribner's part to take the title in his own name and convey to Meade a half interest. The proof shows, looking at it in the most favorable light to Meade, that there was an

agreement between Meade and Scribner that each should have
a half interest, and that Scribner should deed such half to
Meade, but that Meade paid no part of the purchase price.
It is clear from the evidence and the findings of the court, that
there can be no recovery upon the theory of an express trust.
It is also clear that there can be no recovery upon the theory
of a resulting trust, for in order for such a trust to arise upon
a purchase, it is indispensable that the payment should have
been made by the beneficiary, or that an absolute obligation
to pay should have been incurred by him as a part of the
original transaction of purchase, at or before the time of the
conveyance.   2 Pomeroy's Equity Jurisprudence, sec. 1037;
*In re Stanger*, (D. C.) 35 Fed. 239; *Woodside* v. *Hewel*, 109
Cal. 481, 42 Pac. 152.   The appellee claims, however, that a
constructive trust has been imposed, his contention being that
where it appears that an agent employed by his principal to
negotiate for the purchase of land, purchases in his own name
and with his own money, the transaction, on account of the
circumstances, will be held to be impressed with reasons of
equity and justice with a constructive trust in favor of the
principal.

If we could ignore the fact that the pleadings raise no such
issue, and that upon the evidence the relation of Scribner was
rather that of a bailee holding his funds subject to Meade's
orders, than that of an agent to purchase or negotiate a pur-
chase for Meade, we still do not think that a constructive trust
could be held to be impressed.   As said by Mr. Pomeroy, such
trusts "include all those instances where a trust is raised by
the doctrines of equity for the purpose of working out justice
in the most efficient manner, where there is no intention of
the parties to create such a relation, and in most cases contrary
to the intention of the one holding the legal title, and where
there is no express implied written or verbal declaration of
the trust. . . . They are often termed trusts *in invitum*,
and this phrase furnishes a criterion generally accurate and
sufficient for determining what trusts are truly 'constructive.'
An exhaustive analysis would show, I think, that all instances
of constructive trusts, properly so called, may be referred to
what equity denominates fraud, either actual or constructive,
as an essential element, and as their final source."   2 Pom-
eroy's Equity Jurisprudence, sec. 1044.   One form of such

constructive trust *ex maleficio* is where a person obtains the title to land by means of an intentional false verbal promise to convey to a third person, and having thus fraudulently obtained the property retains it. Equity regards such person as holding it charged with a constructive trust. The trust in such a case arises wholly from the fraud, and is in most jurisdictions expressly excluded from the operation of the statute of frauds. 2 Pomeroy's Equity Jurisprudence, sec. 1055.

In all such cases, however, as pointed out, fraud actual or constructive must be found. Not only is the complaint here lacking in any allegation sufficient to cover such claim, but there is no finding of the trial court of actual fraud, or of such facts as would show constructive fraud, and the evidence does not support such claim. At best, the facts disclose a mere verbal promise to purchase and convey, and a subsequent refusal. This is not sufficient to impose such trust. Furthermore, such a promise, not being in writing, is not enforceable under our statute of frauds (Rev. Stats. Ariz. 1901, par. 2696). *Spencer* v. *Lawton*, 14 R. I. 494. To quote again from Mr. Pomeroy: "The foregoing cases should be carefully distinguished from those in which there is a mere verbal promise to purchase and convey land. In order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated; there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated. Equity does not pretend to enforce verbal promises in the face of the statute; it endeavors to prevent and punish fraud by taking from the wrongdoer the fruits of his deceit, and it accomplishes this object by its beneficial and far-reaching doctrine of constructive trusts."

The case of *Dunphy* v. *Ryan*, 116 U. S. 491, 6 Sup. Ct. 486, 29 L. Ed. 703, is a case almost identical with the case the appellee seeks to make upon the evidence, and the findings of the trial court. There, however, under a similar agreement as is contended is in the case before us, the defendant by cross-complaint sought to compel the plaintiff to take a deed to the property he had purchased, the converse of the case at bar, where the plaintiff seeks to obtain such deed. The court

there held that the general denial of the making of the contract alleged was sufficient to let in the defense of the statute of frauds; that such a contract was clearly within the statute, it being simply a verbal agreement to convey land for a certain consideration; that a contract so void by the statute could not be enforced directly or collaterally; that the fact that the purchaser was acting as the agent of the plaintiff, as well as for himself, did not avail to take the case out from the operation of the statute, the suit being based upon, and brought to enforce, the void contract; that the contract being void under the statute, there was no obligation upon the plaintiff to accept the deed tendered to him, or to pay any part of the purchase money; that the case, neither in the averments nor in the prayer, was one for equitable relief, and that the mere breach of a verbal promise for the purchase of the lands would not justify the interference of a court of equity, there being no fraud in such refusal. The case fully meets the contentions of the appellee, and is conclusive of this appeal.

We think that the trial court in the findings made by it went outside of the issues raised by the pleadings, and furthermore, that upon the findings as made by it, and upon the evidence, the trial court was in error in its conclusions that the defendant held a half interest in the property in trust for the plaintiff, which he was obligated to convey to him.

The judgment of the district court is reversed, and the case remanded for a new trial.

SLOAN, J., CAMPBELL, J., and NAVE, J., concur.