[Civil No. 3075. Filed November 16, 1931.]

[4 Pac. (2d) 900.]

HATTIE E. JACKSON, Appellant, v. LIDA P. GRIFFIN, Executrix of the Last Will and Testament of WILLIAM F. GRIFFIN, Deceased, Appellee.

Mr. Joseph M. Holub, Mr. C. B. Wilson and Mr. Orinn C. Compton, for Appellant.

Messrs. Favour & Baker, for Appellee.

LOCKWOOD, J.—Hattie E. Jackson, hereinafter called plaintiff, presented her claim to Lida P. Griffin, as executrix of the last will and testament of William F. Griffin, deceased, hereinafter called defendant, for the allowance of a certain promissory note in the sum of $2,000, dated June 9, 1927, and executed by the deceased. Defendant refused to approve the claim, either in whole or in part, and this suit was brought in accordance with the statute. The case was tried to the court sitting without a jury, and judgment rendered in favor of defendant, and the case is now before us for review.

With one exception, the facts necessary to a proper determination of the case are undisputed, and we state them as follows: Defendant's decedent, William F. Griffin, took out a certain policy of life insurance in the Occidental Insurance Company on November 5, 1910, his first wife being named therein as beneficiary. On August 19, 1919, he borrowed $572 from the insurer, assigning the policy to it as collateral. Some years later he was divorced, and in 1923 changed the beneficiary in the policy in question to one of his sisters, Hattie E. Jackson, plaintiff herein. He also had another insurance policy in which his former wife had been named beneficiary, and at the time he changed the beneficiary in the first policy to Mrs. Jackson, he changed the beneficiary in the second one to another sister, Mrs. Noble. At that time he was not indebted to Mrs. Jackson in any way. In June, 1924, about ten months after he had named

her as beneficiary, he borrowed the sum of $2,000 from her without giving any security therefor, unless the insurance policy be considered as such. This money was invested in the automobile business in which decedent was engaged at the time of his death.

In February, 1925, decedent married Lida P. Griffin, defendant herein, and shortly thereafter made a will, naming her as his sole heir. In 1926 he paid his indebtedness to Mrs. Jackson, from the proceeds of the business, but immediately reborrowed the money from her, and re-invested it in the same manner, giving the note involved in this case, and telling her that at any time she wanted the money he would repay it, as he had enough of his own on hand, and only accepted the loan so as to keep her funds working for her.

Griffin died as a result of an accident in 1928, and his wife was duly appointed executrix under his will. Plaintiff proceeded to collect the net proceeds of the insurance policy in question, amounting to $1,980, and thereafter presented the claim involved in this action to the executrix for allowance. This allowance was refused by the latter on two grounds: First, that the debt was the separate debt of decedent, while the entire estate left by him was community property; and, second, that the insurance policy in question was kept in the name of plaintiff as beneficiary solely as security for the payment of the note, and that the receipt by the latter of the proceeds of the policy was payment of the note. Defendant offered to pay the difference between the face of the note with interest, and the amount received on the insurance policy, but such offer was not made as an admission of liability, but as a compromise, and when refused, was withdrawn. Plaintiff then filed this suit and defendant answered, setting up the two defenses as above set forth, and also a counterclaim for the in-

surance premiums on the policy in question from the date of her marriage with decedent, alleging that they were paid either from her separate property or from the community funds.

There are three assignments of error, which we shall take up in their inverse order. The third is that there is no evidence to support the defense that the insurance policy in question was security for the payment of the note, or held as collateral for the indebtedness. In determining this question we, of course, are governed by the rule that if there is any substantial evidence in the record sustaining a judgment, it will be affirmed. *Old Dominion Copper M. & S. Co.* v. *Andrews,* 6 Ariz. 205, 56 Pac. 969. Also, that the trial court is the judge not only of the credibility of the witnesses, and the weight of the evidence, but also of all reasonable inferences which may be drawn from the evidence. *Moeur* v. *Farm Builders Corp.,* 35 Ariz. 130, 274 Pac. 1043. We consider, then, the testimony on this point, taken in its strongest light in favor of defendant.

The only direct evidence bearing thereon is the testimony of defendant, and of the witnesses Katie M. Bays and P. F. Bays, concerning a conversation between Mrs. Jackson and Mr. Griffin in Prescott, in the fall of 1927. P. F. Bays testified in substance that Mr. Griffin said to Mrs. Jackson "that he wanted to return her money and get his policy changed." Mrs. Bays said that Griffin told Mrs. Jackson "that he would return her, Mrs. Jackson's money, and get the beneficiary of his policy changed, as he wanted no more dealings with her, anyway." Mrs. Griffin testified that he said "he was going to send her money back right away and get his policy; that she was secured; he gave her a paid-up policy. You are not putting up a nickel for me." The record further shows that about the same time Griffin bor-

rowed the money from Mrs. Jackson he was indebted to Mrs. Noble, his other sister, for money borrowed from her; that he had named Mrs. Noble as beneficiary in another policy at the same time he named Mrs. Jackson beneficiary in the policy in question, but later gave Mrs. Noble, as security for her loan, certain other notes due him from third parties, and then had the insurance policy in which he had named her as beneficiary changed in favor of his wife. Mrs. Jackson, of course, denied any such conversation as the one testified to by Mr. and Mrs. Bays and Mrs. Griffin.

Taking all of this evidence together, we cannot say affirmatively that the trial court was not justified in inferring therefrom that it was the mutual understanding between Mrs. Jackson and her brother that after his remarriage the insurance policy was left standing with her name as beneficiary therein as security for the money which he owed her, rather than as a direct gift. Plaintiff has cited us to the case of *Pherigo* v. *L. Gutman & Son,* 150 Ky. 779, 150 S. W. 1022, as being practically on all-fours with this case. We have examined that case, and are of the opinion that the circumstances appearing therein are very different from those in the case at bar. The only evidence in the case cited to sustain the idea that the insurance policy was security was the statement of two witnesses "that they understood this was why he did it." But as the court there well said, "they do not testify to any statement of his or hers to this effect." In the case at bar three witnesses testified to positive statements made by decedent from which the court itself could draw the inference as to why he did it, instead of, as in the case cited, allowing the inference to be drawn by the witnesses. Further, decedent's conduct in regard to the Noble insurance policy and loan is quite persuasive. There is

no reason apparent on the record why he should have preferred one sister over another, and the fact that he replaced Mrs. Noble with his second wife as beneficiary as soon as he gave her additional security for the loan made by her would indicate that the reason he did not change the beneficiary in the policy given Mrs. Jackson at the same time was because she had no other security for her loan.

If the policy was given as security, any amount collected thereon necessarily should be credited on plaintiff's claim. It appears, however, from the undisputed testimony that the policy failed by $152 in paying the amount of the note. Unquestionably, therefore, decedent's estate was indebted to plaintiff in the last-named amount. It was the duty of defendant to allow the claim for the $152 which was due thereon, and we think the defense that the entire estate's assets were community property is not a meritorious one. When an estate is probated the amount of assets has nothing to do with the *allowance* of claims, though it may with their *payment*. And even were the assets all community funds, the separate debts of decedent are payable from his share of the community. In the case of *Crawford* v. *Morris,* 92 Wash. 288, 158 Pac. 957, it was held that while the separate debts of a husband were not chargeable against the community property during the lifetime of the spouse, upon his death it became chargeable against his half of the community property. While the Washington and Arizona statutes in regard to the disposition of the community estate are not identical in language, they are undoubtedly the same in meaning, and we think, as is well stated in the case cited:

"To go further than to exempt the joint estate from separate creditors during the spouse's life will not do. That a man during a long married life may accumulate vast properties in which he has an ad-

mitted half interest, and yet that such creditors shall go unpaid as cannot bring themselves within the joint class, is not a little hard, but was forced upon us by the statute. To say that even death does not relax this situation and that the spouse has power to give away his half, bequeathing, if he has a mind, the whole of it to strangers beyond the seas, with his creditors having no right to a penny of it, would be an unnecessary and intolerable extension of the doctrine. Our statute does not pass his half to the surviving spouse and so continue the solidity of the joint estate. It divides it. It makes it plainly separate then, so we hold it subject to separate debts.''

Nor can this defendant avail herself of her offer of payment for two reasons: In the first place, it was made, according to her answer, not as an admission of liability, but as a compromise offer, and, in the second place, it was withdrawn. Nor do we think that the counterclaim for premiums paid out of community funds should be allowed. Even assuming without deciding that the community estate was entitled to recover the money advanced by it to pay the premiums on the separate property of deceased—the policy—it would only increase the amount which plaintiff could recover from decedent's half of the community to the same extent, and in the absence of a showing that the estate is insolvent it would be mere circuity of action to allow the counterclaim.

For the foregoing reasons the judgment of the superior court of Yavapai county is reversed and the case remanded, with instructions to enter judgment for plaintiff in the sum of $152, with interest at eight per cent, thereon from the date of suit, together with an attorney's fee in the sum of $15.20, and that the executrix shall pay the same in the due course of the administration in the same manner as other claims are paid.

McALISTER, C. J., and ROSS, J., concur.