219 P.2d 760

### ROGERS v. GREER.
### No. 5129.

Supreme Court of Arizona.

Decided June 19, 1950.

W. E. Ferguson, of Holbrook, for appellant.

Earl Platt, of St. Johns, for appellee.

DONOFRIO, Superior Judge.

Plaintiff-appellant, Esther I. Rogers, individually and as administratrix of the estates of Isaac Isaacson, Sr., and Elsina Isaacson, husband and wife, prosecutes this appeal from the judgment of the trial court quieting title in defendant and refusing like relief to plaintiff involving the identical property.

The facts about which there seems to be no conflict except as to the interpretation to be placed upon them may be summed up as follows: The plaintiff, Esther I. Rogers, and the defendant, Natalia I. Greer,

are daughters of the decedents Isaac Isaacson, Sr., and Elsina Isaacson. Prior to September, 1924 the Isaacsons owned a hotel building, the subject of this litigation, in St. Johns, Arizona. On September 29, 1924, defendant acquired a deed which was properly executed, delivered, and recorded soon thereafter, from the Isaacsons covering the property. Prior to and at the time of the deed there had passed from the defendant to Mr. Isaacson several sums of money. Testimony varied as to the amount but defendant claimed to have loaned the sum of $2,600, receiving notes therefor prior to the deed, and that she paid the sum of $400 cash at the time the deed was executed. At all times subsequent to this deed, defendant had possession of the property and collected the rents therefrom and paid taxes thereon. There is, however, some dispute as to certain of these rent collections and tax payments, and in an instance of the execution of a lease on the premises by Mr. Isaacson, also as to certain repairs. The building was occupied by several tenants, and in some instances by decedents' children. For the most part all business transacted concerning the property was done by defendant personally, although, in some instances the father was consulted. Defendant borrowed some money, executing a mortgage on the property, part of which is outstanding.

It was contended by plaintiff and denied by defendant that defendant executed a deed of the property back to her parents subsequent to September 29, 1924. The evidence on this point arose in the following manner. On cross-examination defendant was interrogated at some length concerning execution of a deed by herself or together with her then husband reconveying the property to her father. This she denied. and was then asked if she had not testified in a divorce cause in Maricopa County entitled Gilbert E. Greer, Plaintiff vs. Natalia I. Greer, Defendant, to the effect that she didn't own the property and that she had deeded it back to her father. To impeach her testimony in this regard a transcript of her testimony in 1942 presumably given at an order to show cause hearing in her divorce case was placed in evidence. It appears from the reading of this transcript that she did state she and her husband had executed a deed back to her father which had not been recorded.

Other facts material for the purposes of the opinion will be stated later in the proper connection.

There are two assignments of error by plaintiff. First, that the court erred in rendering judgment for defendant and against plaintiff in refusing to quiet title in plaintiff under the theory of her complaint, and, secondly, that the court erred in refusing to treat defendant as being estopped by deed. There are six legal propositions which will be discussed as they arise in the case.

Plaintiff's complaint to quiet title advances three theories as to her ownership

of the property. First it is alleged that the decedents Isaacson made a deed to defendant for the purpose of securing a loan and was therefore in fact a mortgage; that the loan had been repaid; and that no attempt had been made to foreclose the asserted mortgage. Secondly, she urges that it was orally agreed between the intestates and defendant that said property was to be held in trust by defendant for the use and benefit of said intestates, defendant orally agreeing to manage the property and apply the rents, issues, and profits accruing therefrom upon liquidation of the loan and in payment of taxes and other expenses of the property; further that all considerations for said loan have been repaid to defendant. As a third theory plaintiff urges that defendant reconveyed the land by deed to the intestates Isaacson, which deed has not been placed of record, and has either been lost or destroyed, and by which the defendant is now estopped to claim any interest in the property.

The first question of law which arises is one of pleading. Appellee contends that appellant sets forth in her Amended Complaint two wholly inconsistent allegations and theories, namely, the first being that the deed of September 29, 1924 was in truth and in fact a mortgage, and the second being that defendant acknowledges the deed as a conveyance of title, but maintains that it was conveyed in trust, and that there was an oral agreement to hold the property in trust for the use and benefit of appellant's intestates.

■ We believe that these two claims can properly be pleaded and the theories advanced under our rules of civil procedure, Section 21-408, A.C.A.1939, which provides as follows:

*"Pleading to be concise and direct—Consistency.*—(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

"(2) A party may set forth two (2) or more statements of a claim or defense alternatively or hypothetically, either in one (1) count or defense or in separate counts or defenses. When two (2) or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one (1) or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both. * * *"

Our rules follow the Federal Rules of Procedure, 28 U.S.C.A., and the Federal Courts have construed this section as follows: "A party [may] state his case as extensively as he wishes. He is not confined to one theory." Crim v. Lumbermans Mutual Casualty Co., D.C., 26 F.Supp. 715, 718. To the same effect, Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693.

■ In support of the first theory appellant states the law to be that a deed absolute in form which is given to secure pay-

ment of money is a mortgage, and the question as to whether a deed absolute in form be a mortgage is a question of intention to be inferred from all the facts and circumstances of the transaction in which the deed was executed, taken into consideration with the conduct of the parties after its execution. This, we believe, correctly states the law, and this court has stated: " * * * The principal test to be applied in determining whether a given instrument is a mortgage is whether the relation of the parties towards each other of debtor and creditor continued after the execution of the instrument. * * * Says the Supreme Court of California, in Montgomery v. Spect, 55 Cal. 352: ' * * * In such cases, the central fact to be found is the existence of an indebtedness at the time of the transaction, and a continuation of the relation of debtor and creditor. If that fact be found, the inference deducible from it is that the deed was not made to transfer the title to the land described in it, but was made for the purpose of securing the debt which the grantor owed to the grantee.' " Coffin v. Green, 21 Ariz. 54, 185 P. 361, 363.

See also Farrell v. West, 57 Ariz. 332, 113 P.2d 866.

■ Therefore there is no question that a conveyance intended, at the time of its execution, to be a security for the payment of money, will be considered a mortgage. However, there is a decided conflict in the evidence of this case as to whether the deed was given as a security for the loans,

and according to the well-established rule, this court will uphold the judgment of the trial court if it is reasonably supported by the evidence.

A few extracts from the testimony of defendant demonstrate the conflicts.

"Q. Now, at the time of the execution of this deed, Mrs. Greer, how much did you pay your parents, or either of them? A. I think I paid about thirty some odd hundred dollars.

"Q. Now, is it your testimony that this conveyance to you in this Exhibit No. 1 was an out and out sale of this property to you by your Mother and Father? A. Yes, sir."

■ Plaintiff's second theory is based upon express parol trust in land. This court has repeatedly held an express parol trust in land to be within the statute of frauds, Wright v. Young, 20 Ariz. 46, 176 P. 583; Cashion v. Bank of Arizona, 30 Ariz. 172, 245 P. 360. In Wright v. Young, supra, the alleged deed was given by plaintiff to Wright conveying realty and recited a valuable consideration paid, and we quote therefrom:

"The authorities are to the effect that in a deed of this character, giving on its face clear indication that an absolute estate was intended to pass either by the recital of a valuable consideration paid, or by an express covenant to warrant and defend the title, no trust would be implied by reason of the fact that no consideration was actually

paid. Gaylord v. Gaylord, 150 N.C. 222, 63 S.E. 1028.

"To the effect that a parol trust may not be ingrafted on a deed absolute on its face in favor of the grantor as against the grantee, Gaylord v. Gaylord, supra, seems to be decisive * * *." [20 Ariz. 46, 176 P. 585]

Although there is a split authority in other jurisdictions and under the common law the rule was otherwise, this court, in the more recent case of Stewart v. Damron, 63 Ariz. 158, 160 P.2d 321, 324, stated as follows: "Our statute of frauds does not contain any direct provision pertaining to the creation of trusts. The seventh section of the English statute, providing that a trust must be manifested by writing, was not adopted by our Legislature. Under the common law an express parol trust in land is valid and provable without a writing. 65 C.J. 244, § 32, Trusts. This court has held an express parol trust to be within the statute of frauds. Cashion v. Bank of Arizona, 30 Ariz. 172, 245 P. 360. The holding was approved in MacRae v. Mac-Rae, 37 Ariz. 307, 294 P. 280. Even though the wisdom of those decisions might be doubted, we feel that the matter is foreclosed by the rule: Stare decisis et non quieta movere."

Stewart v. Damron, supra, stands, however, for the proposition that an express parol trust may be taken out of the statute of frauds by part performance, and an action to establish a constructive trust has also been recognized by this court, Scribner v. Meade, 10 Ariz. 143, 85 P. 477; MacRae v. MacRae, supra. However, these two propositions are not involved in the instant case.

But, even assuming some theory of creating a trust is tenable the evidence and the rule in regard to a conflict in the evidence previously expressed in discussing plaintiff's proposition that the deed was given as a mortgage are equally applicable here, and we will sustain the trial court's findings if supported by reasonable evidence. Solomon v. Solomon, 62 Ariz. 311, 157 P.2d 605.

We come now to the last and more difficult assignment of error and legal propositions. These arise out of plaintiff's third theory urging that defendant reconveyed the land by deed to the intestates and is now estopped to claim any interest in the property.

As previously stated the defendant repeatedly denied executing any deed back to her parents; however, it appears from the testimony in the divorce cause that defendant stated she and her husband had executed a deed back to her father which had not been recorded. By way of explanation she testified: "A. Certainly. I would like to tell you how I come to have that deed in my name. In 1924 my father was in a lawsuit, he ran a saw-mill and somebody had been hurt and Mr. Greer advised him to deed it away. Part of this property belonged to my sister and my brother so they wouldn't close him out, Mr. Greer closed it out, that

is, he had notes in my name. *I have a deed from Mr. Greer and myself to my father."* (Emphasis supplied.)

It would appear from the above testimony that the deed relied upon by appellant in her theory of estoppel by deed was never delivered, and the fact that the deed was never produced or the details of its contents shown undoubtedly may have led the learned trial court to hold that appellant failed in her proof of this affirmative fact. Or for that matter, there is nothing unreasonable in assuming that the trial court may have regarded her testimony at the divorce hearing as perjury and untrue, motivated by a desire to show in the order to show cause hearing that she had very little means of support in order to have a satisfactory decision in her behalf.

█ We repeat the familiar doctrine that the conflicts of the evidence are *within* the sole province of the trier of facts for determination. The trial court sitting without a jury is judge of the credibility of witnesses, the weight of evidence, and also the reasonable inference to be drawn from the evidence. Jackson v. Griffin, 39 Ariz. 183, 4 P.2d 900; Hyder v. Barton Hat Co., 29 Ariz. 380, 241 P. 959; Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P. 2d 456; Brady v. Brady, 48 Ariz. 308, 61 P.2d 390.

In Ong v. Cole, 46 Cal.App. 63, 188 P. 812, 814, a similar situation arose concerning the delivery of a deed in a quiet title suit, wherein one of the parties gave contradictory and conflicting evidence in a prior probate hearing to that given in a deposition and in the quiet title action. The generally accepted rule supported by innumerable authorities is well stated by the following excerpt from this case: "* * * It is the province of a court to harmonize, if it can, the testimony of different witnesses, and if this cannot be done, to decide whose testimony to accept. Similarly, when there appears to be conflicting accounts of the same transactions given by the same person, it is the duty of the court to determine which statement it will accept as being in accord with the fact. The court could accept the version of the transaction given by the witness at this trial, notwithstanding it might appear to be in conflict, to some extent, with statements made by her on other occasions."

To like effect see Bitsekas v. Parechanian, 67 Cal.App. 148, 226 P. 974.

█ It must be remembered in this connection we are *not* dealing with the rule of law applied in our recent case of Sears Roebuck & Co. v. Industrial Commission, 69 Ariz. 320, 213 P.2d 672, wherein this court held that because of applicant's previous statements which impeached her testimony and all the other circumstances surrounding the case, the award of the Commission was without reasonable support in the evidence. In the instant case there is reasonable evidence to support the trial court.

In conclusion, let us note that it has not been necessary in considering this last assignment of error for us to determine to what extent the equitable maxim of "He who comes into equity must come with clean hands" should apply. It can be noted that it is evident from the above-quoted testimony given by defendant in the divorce case that defendant attempted to explain that the property had been placed in her name by her parents because of a threatened personal injury lawsuit against them. It is also well to note at this point the additional facts that testimony was adduced at the trial by the Executive Secretary of the Apache County Board of Social Security and Welfare that the Isaacsons began receiving old age assistance in 1937 and in their application for assistance failed to state they had any ownership in the property in question.

In MacRae v. MacRae, supra, we held that the fundamental requisite in determining whether a grantor comes into equity with clean hands as basis for enforcement of a constructive trust is moral intent, and not actual injury done, and that the husband could not enforce a constructive trust resulting from a conveyance to his wife, coupled with a promise to reconvey, where there was intent to defraud creditors, even if the husband's fears of liability to creditors were imaginary.

The guiding light of good conscience may have brought about the judgment by the trial court which in effect left the parties where the court found them.

Judgment affirmed.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.

UDALL, J., having disqualified himself, the Honorable Francis J. Donofrio, Judge of the Superior Court of Maricopa County, was called to sit in his stead.