481 P.2d 536

**Doyle GOATS, Appellant,**

v.

**A. J. BAYLESS MARKETS, INC., an Arizona corporation, and Ralph H. Kagi, Appellees.**

**No. 1 CA–CIV 1276.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 3, 1971.

Rehearing Denied April 6, 1971.

Review Denied May 19, 1971.

Engdahl, Jerman, Butler & Estep, by Dean Estep, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Kenneth J. Sherk and Michael J. O'Grady, Phoenix, for appellees.

J. THOMAS BROOKS, Judge of the Superior Court.

This is an appeal by the plaintiff-appellant, Doyle Goats, from a judgment entered against him in favor of the defendants-appellees, A. J. Bayless Markets, Inc. and Ralph H. Kagi, in an action seeking damages for conversion of personal property. Appellant will be referred to as plaintiff or Goats, and appellees as defendants or as Bayless or Kagi. The action was tried to the court and evidence was received on four non-consecutive trial dates.

On March 25, 1963, Bayless, as lessor, entered into a written lease with one M. H. Wiser, Harriett Wiser and Fern Lewis as lessees. The lease provided for the rental of space in a building owned by Bayless at 35th Avenue and Bethany Home Road in Phoenix. The purpose of the lease was the installation and operation of a bakery to be called the Gingham Girl Bakery. Under the terms of the written document, lessees were obligated to pay a minimum monthly rental of $550.00 over a ten-year term, together with a specified percentage of the gross sales.

Subsequent to the execution of the lease, Bayless agreed to loan lessees the sum of $25,000.00 for the purpose of purchasing bakery equipment to be installed in and used on the premises.

In accordance with their agreement, a promissory note to Bayless, in the principal sum of $25,000.00 was executed by the Wisers and Fern Lewis on the 15th day of June, 1963, said note being secured by a chattel mortgage on certain bakery equipment.

The mortgage specified certain personal property together with:

"all other fixtures, equipment and personal property situate in or installed on said premises and belonging to vendors."

Thus the mortgage does not contain a so-called "after-acquired property clause" as alleged by counsel for defendants in their amended answer, brief on appeal and oral argument presented to this Court. In fact it would appear that both parties might be laboring under this mistaken belief. A reading of the chattel mortgage (Exhibit 3 in evidence) establishes that the printed or typewritten portion of the form did in fact provide that the mortgage included:

"all other fixtures, equipment and personal property situate in or *hereinafter* installed on said premises and belonging to mortgagors." (Emphasis Supplied).

However, the word "hereinafter" has been crossed out and the word "vendor" substituted for the word "mortgagors" in handwriting. It thus appears that the parties specifically deleted that part of the document which purported to include personal property acquired and placed on the premises *after* execution of the mortgage.

Returning to the chronology of events, on June 15, 1963, a supplement to the lease was executed by Bayless and the lessees which provided that any default by lessees under the terms of the promissory note and mortgage of June 15, 1963 would be deemed a default under the lease "without notice of any kind" and that such default would entitle lessor to "all remedies provided by law and by said Department Lease."

Similarly the $25,000.00 note contained the following provisions:

"Should default be made in the payment of any installment hereunder, when due, or should default be made in the pay-

ment of any sums due under that certain Lease, dated March 25, 1963, between the makers hereof as Lessee and the payee hereof as Lessor, then the whole sum of principal and interest due hereunder shall become immediately due and payable at the option of the holder of this note, with interest from the date of such default at the rate of eight percent (8%) per annum until paid on the entire unpaid principal and accrued interest."

Nowhere, in any of the written documents, is the plaintiff Doyle Goats mentioned. All of the documents were executed only by M. H. Wiser and Harriett Wiser, husband and wife, and Fern Lewis, a divorced woman, as lessees, makers and mortgagors respectively, with Bayless as lessor, payee and mortgagee.

Payments were made in accordance with the lease and promissory note until January 1, 1964. When the January payment was not made, notices of delinquency under the lease and note were forwarded on January 2, 1964 to the address set forth in the lease, as the proper address for delivery of notices. The notices of default were received by M. H. Wiser, who testified that he communicated the fact of their receipt to plaintiff.

When no payments on the rent and promissory note were made within the ten days following the written notices of default, Bayless took possession of the bakery on the 14th day of January, 1964. In addition to the personal property particularly described in the chattel mortgage, Bayless seized the following items not described in said mortgage:

1 Hobart Mixer
1 Bun Divider
2 Cash Registers
1 Small sign inside the store
1 Large Outside Sign
Cash in the sum of $191.27 and the Inventory of bakery supplies.

Bayless established a valuation of the inventory of bakery supplies at $1,750.00 which, when added to the cash, totaled $1,941.27. This amount was credited by Bayless to the Wisers and Fern Lewis by paying certain outstanding obligations of the Gingham Girl Bakery as follows:

| | |
|---|---|
| Homes & Son Construction Company, for leasehold improvements | $1,000.00 |
| Federal Withholding Taxes | 593.85 |
| State Sales Tax | 350.00 |
| Outstanding Payroll Checks | 586.38 |

The remaining sum of $219.77 was held by Bayless, which sought to terminate the matter by agreement with the Wisers and Fern Lewis, when on July 8, 1964 plaintiff filed this action asserting ownership of the bakery and seeking compensatory and punitive damages for the alleged conversion of same by Bayless. At no time has Bayless made any attempt to foreclose their chattel mortgage or to sell any of the personal property. Neither the Wisers nor Fern Lewis, lessees and mortgagors of record, were made parties to the litigation.

Plaintiff's involvement with the bakery is shrouded in a great deal of mystery, controversy and conflicting testimony.

Plaintiff claims ownership of the bakery, together with all personal property situate therein, by virtue of oral agreements allegedly entered into with the Wisers, Fern Lewis (plaintiff's sister-in-law) and Bayless through its property manager, defendant Ralph Kagi. Pursuant to these alleged agreements, plaintiff was supposed to be the true owner of the bakery and Bayless was to have prepared a new lease naming plaintiff as lessee. Plaintiff and Mr. Wiser testified that a corporation was to have been formed in which Kagi was to have a personal interest through the issuance of stock. Though the testimony concerning these oral agreements encompasses a large percentage of the transcript in the trial court, suffice it to say that Kagi denied having ever discussed the lease in question, or any lease, with the plaintiff; denied any discussions concerning the formation of a corporation in which he was to have an interest; denied having been advised that plaintiff was the owner of the bakery and denied that he had ever agreed on behalf of Bayless, or anyone else, to execute a lease with the plaintiff.

There was testimony that after Bayless had taken possession of the bakery on January 14, 1964, Kagi agreed that Bayless would pay to plaintiff between thirty-five hundred and four thousand dollars for his interest in the bakery. Defendant Kagi denied, however, that any such proposal was ever made.

The trial court apparently elected to disbelieve the plaintiff and Mr. Wiser with respect to the alleged conversations with defendant Kagi. This should be dispositive of this portion of the controversy as the trial court, sitting without a jury, is the sole judge of the credibility of the witnesses. Rogers v. Greer, 70 Ariz. 264, 219 P.2d 760 (1950).

In addition to the alleged conversations and agreements with Kagi, plaintiff's claim of ownership of the Gingham Girl Bakery and equipment therein was predicated on the fact that plaintiff made payments to the Gingham Girl bank account and obtained licenses for and insurance coverage on the bakery in his name and forwarded copies of the insurance policies to defendants. In addition, his claim of interest is allegedly corroborated by the fact that he worked at the bakery on occasions. Also, Mr. Wiser and Mrs. Lewis testified that at the time Bayless took possession of the property, plaintiff was the owner thereof, although at no time during the course of the trial was any documentation offered or received in evidence which would substantiate a transfer of the business from the Wisers and Mrs. Lewis to the plaintiff, nor was there any documentation substantiating plaintiff's claim of ownership except the business license and insurance policy which he himself procured.

The trial court, in finding in favor of the defendants and against the plaintiff, did not make formal findings of fact and conclusions of law, except that it did specifically find that the lease, supplemental lease, promissory note and chattel mortgage were in fact executed by the Wisers, Fern Lewis and Bayless and that at all times material to the litigation, Bayless was proceeding in accordance with those instruments and agreements.

Several questions are presented for review:

1. Was the plaintiff the lessee in possession of the Gingham Girl Bakery and owner of the personal property described in or covered by the chattel mortgage on January 14, 1964?

2. Was plaintiff the owner of any equipment or personal property seized by Bayless, which was not included in the chattel mortgage?

3. Did defendants breach any duty to plaintiff and did defendants convert any property belonging to plaintiff?

We first consider the question of whether or not plaintiff sustained his burden in establishing that he in fact was the owner of the Gingham Girl Bakery and the equipment covered by the chattel mortgage on the day when Bayless entered upon the premises and took possession, namely January 14, 1964.

As plaintiff is a stranger to the lease and chattel mortgage, we must determine whether or not reasonable evidence was presented in support of his contention that he had an oral agreement with defendant Bayless, or an oral assignment from the Wisers and Mrs. Lewis which would entitle him to possession of the premises or ownership of the personal property.

We summarily dispose of plaintiff's claim of an oral agreement with Bayless, as well as his assertion that Bayless had knowledge of plaintiff's claim of ownership of the bakery prior to their taking possession thereof, since the evidence on this point was, at best, conflicting and we will not substitute our opinion for that of the trial court. Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242 (1961).

With regard to plaintiff's assertion that the Wisers and Mrs. Lewis had orally assigned their interest as lessees of the Gingham Girl Bakery to plaintiff, such action, even if it had taken place, could not

in any way be binding upon Bayless without its knowledge and consent since the lease in question was one for more than one year duration and would therefore be within the Statute of Frauds, which defense was affirmatively pleaded by defendants. Arizona Revised Statutes, § 44–101 subsecs. 5 and 6.

Moving to plaintiff's claim of ownership of the personal property described in the chattel mortgage between the Wisers, Fern Lewis and Bayless, we again find a complete lack of documentation to substantiate plaintiff's claim as not a single instrument received in evidence at the trial established that plaintiff had purchased or owned any of the items of equipment or other personal property.

Plaintiff contends that his testimony alone would have been sufficient to establish his ownership as against the defendants under the rule that a witness may testify directly as to the ownership of personal property.

Plaintiff further argues that his testimony as to ownership of the personal property was corroborated by Mr. Wiser and Fern Lewis who testified that at the time Bayless took possession of the bakery, plaintiff was the sole owner by virtue of an oral assignment. In other words, the persons whom defendant Bayless claims to be the owners of the property disclaim any interest therein.

Although plaintiff does not specifically urge the following proposition in his brief on appeal, it would appear that he is arguing that the trial judge erred in arbitrarily rejecting uncontradicted evidence of a party especially when such testimony was corroborated by disinterested witnesses.

As stated in Reliable Electric Co. v. Clinton Campbell Contractor, Inc., 10 Ariz. App. 371, 459 P.2d 98 (1969), the rule in its entirety is correctly summarized in Udall, Arizona Law of Evidence, Section 3, Page 10, as follows:

"As a general rule the jury or other trier of fact is the sole judge of the witnesses' credibility and is not required

to accept the evidence of an interested party, even though uncontradicted. But this general principle is qualified by several important exceptions. The trier of fact may not arbitrarily reject uncontradicted evidence of a party when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion upon it. Nor may it be rejected where it is corroborated by a disinterested witness or an independent document." (Citations Omitted)

■ Applying this rule to the instant case, we cannot agree that the lessors and mortgagors of record, Mr. Wiser and Mrs. Lewis can be considered "disinterested witnesses." Mrs. Lewis, sister-in-law of the plaintiff, and Mr. and Mrs. Wiser, would be very much interested in the outcome of this litigation by reason of the fact that they, and only they, have obligated themselves to Bayless pursuant to written agreements having reference to the operation of the Gingham Girl Bakery.

Further, in addition to the fact that plaintiff's claim is contradicted by the written documents, there was evidence presented during the course of the trial, which would certainly cast suspicion upon his claim.

The testimony of Frank Carroll, owner and manager of Arizona Bakery Sales, established that in late October of 1963 he had a conversation with the plaintiff concerning an open account indebtedness of the Gingham Girl Bakery to Arizona Bakery Sales. (This being during the time when plaintiff claims to have been owner of the bakery, together with the equipment contained therein.) Carroll testified that upon hearing that Goats might have something to do with the bakery, he called Goats on the telephone at Goats' place of business in Phoenix, known as Arizona Leather Goods. Carroll testified, in part, as follows:

"Q. And who did you call?

A. Mr. Goats.

Q. And where was he?

A. At his business.

Q. Did he answer the telephone?

A. I don't recall but I did finally speak to him in person.

Q. At any rate he got on the telephone?

A. He was on the phone.

Q. Can you relate the substance of that conversation for us?

A. *I identified myself, explained the reason why I was calling, concerning the indebtedness owed my company by Gingham Girl Bakery, and my understanding to the effect that he was connected someway with the ownership of this operation.*

*And his reply was to the effect that he had no further connections with this operation, and was certainly not responsible for the debts.*

Q. Did he tell you whose company it was?

A. Well, I could not answer that question in all fairness. This conversation took place in October of 1963.

Q. *But he did state that he had no further ownership interest?*

A. *Right. This much I recall very definitely.*

Q. *Did he offer to pay the indebtedness as reflected in the account?*

A. *No.*

Q. *Has it ever been paid?*

A. *No."* (Emphasis Supplied.)

Charles Tate testified that he was employed as a baker in April of 1963 by the Wisers and Mrs. Lewis, to supervise the Gingham Girl; that he was so employed up to and including January 14, 1964 when Bayless took over the business; that all bills incurred in the operation of the bakery were forwarded by him to Mr. Wiser in California; that at no time did he ever receive any instructions from the plaintiff Doyle Goats; that Goats had been introduced to him by Mr. Wiser only as "Fern Lewis' brother-in-law;" that Mrs. Lewis signed all of the pay checks; that at all times he dealt with the Wisers and Mrs. Lewis, as owners of the business.

Thus, considering all of the testimony, together with the surrounding circumstances, the trial judge did not act in an arbitrary manner when he elected to disregard the plaintiff's testimony as to ownership of the property, even though such testimony was corroborated by Mr. Wiser and Mrs. Lewis. The trial court is in the best position to judge the credibility of the witnesses, the weight of evidence, and also the reasonable inferences to be drawn therefrom. Rogers v. Greer, supra; Cavazos v. Holmes Tuttle Broadway Ford, Inc., 104 Ariz. 540, 456 P.2d 910 (1969).

We thus hold that the trial court did not err when it found in favor of the defendants and against the plaintiff as to all items of personal property covered by the chattel mortgage of June 15, 1963. Defendants owed no duty to the plaintiff with respect to this property when they closed the Gingham Girl Bakery and took possession of same pursuant to the lease and chattel mortgage between Bayless, the Wisers and Mrs. Lewis.

A somewhat more difficult question confronts us in dealing with the items of personal property not specifically mentioned in the chattel mortgage, together with the cash and inventory on hand when Bayless took possession on January 14, 1964. Plaintiff argues that at least, with respect to this property, the evidence was absolutely uncontradicted in establishing his ownership.

There were, however, many matters intrinsic in the evidence, as well as extrinsic in the circumstances, to support the apparent finding of the trial court that as against defendants, plaintiff had no interest whatsoever in the Gingham Girl Bakery. Whether or not plaintiff might have a cause of action against the Wisers and Mrs. Lewis with regard to this property is a matter with which we need not be concerned.

There were many inferences supported by the evidence to sustain the judgment of the

trial court which inferences must be accepted in favor of the appellees. Contractor & Mining Service & Supply, Inc. v. H & M Tractor & Bearing Corp., 4 Ariz.App. 29, 417 P.2d 542 (1966).

Affirmed.

STEVENS, P. J., and DONOFRIO, J., concur.

NOTE: The Honorable JAMES DUKE CAMERON a member of this Court at the time of the oral argument, requested that he be relieved from the consideration of the merits of this appeal and The Honorable J. THOMAS BROOKS, a Judge of the Superior Court, was called to sit in his place.