NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In Re The Marriage Of

JENNIFER MARIE THORNBURG, *Petitioner/Appellant*,

*v.*

RODNEY MCDOWELL THORNBURG, II, *Respondent/Appellee*.

No. 1 CA-CV 18-0750 FC
FILED 11-19-2019

---

Appeal from the Superior Court in Maricopa County
No. FC2017-090742
The Honorable Joshua D. Rogers, Judge

**AFFIRMED**

---

COUNSEL

Alongi Law Firm, P.L.L.C., Phoenix
By Thomas P. Alongi
*Counsel for Petitioner/Appellant*

Novo Law Firm, Chandler
By Caitlin L. Andrade
*Co-Counsel for Respondent/Appellee*

Hall Underwood, P.L.L.C., Scottsdale
By Jay J. Hall, Emi Koyama
*Co-Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Diane M. Johnsen joined.

_____

**J O N E S**, Judge:

¶1          Jennifer Thornburg (Mother) appeals the family court's post-decree orders: (1) denying her petition to modify parenting time and (2) awarding attorneys' fees to Rodney Thornburg, II (Father).  For the following reasons, we affirm.

## FACTS & PROCEDURAL HISTORY

¶2          In March 2017, Mother petitioned for dissolution of her marriage to Father.  In her petition, Mother requested the family court grant her sole legal decision-making authority over the parties' four minor children (the Children), who ranged in age from three to nine, and restrict Father's parenting time.  At the September 2017 evidentiary hearing, Mother alleged her requests were warranted because Father had (1) struck their eldest child (R.) "with a stool in June 2016," and (2) "forced himself upon Mother."  Father denied these allegations, and the parties ultimately agreed to share joint legal decision-making authority, with Mother having the final say.

¶3          As to parenting time, the family court ordered that Mother remain the primary residential parent.  Father, who lived out-of-state, was awarded six weeks of uninterrupted parenting time during the summer, as well as time with the Children during their spring, fall, and winter breaks. The court denied Mother's request that Father's time with the Children be supervised.  The decree of dissolution was entered in September 2017.

¶4          Three months later, Mother filed both a petition to modify legal decision-making authority, parenting time, and child support, and an emergency motion to temporarily modify parenting time without notice to Father. Mother alleged Father was under investigation for sexually abusing their eldest child, R., and sexually assaulting Mother.  The family court denied Mother's *ex parte* motion and set a return hearing for January 2018. Mother failed to appear for the hearing, and the court denied her motion and dismissed her petition for lack of prosecution.

2

¶5        In June 2018, Mother filed a second petition to modify parenting time and a second emergency motion to temporarily modify parenting time without notice to Father. That same day, Father filed a petition to enforce parenting time, alleging Mother had unreasonably interfered with three days of his parenting time in January 2018 and denied him six weeks of parenting time during the summer of 2018. The court again denied Mother's *ex parte* motion and set an evidentiary hearing for August 2018 concerning the motion and all petitions.

¶6        At the August 2018 hearing, Mother cited several reasons in support of her request to change Father's parenting time. First, Mother alleged R. sexually acted out against his siblings after visits with Father. In support, Mother presented records from Phoenix Children's Hospital (PCH) documenting psychiatric care provided to R. for his attention-deficit/hyperactivity disorder (ADHD), sexualized behavior, and anxiety.

¶7        Second, Mother alleged that, on a few occasions, Father failed to follow DCS safety plans by allowing R. to co-sleep with siblings he had allegedly sexually abused in the past. Mother presented a DCS "safety plan" she agreed to follow in November 2017, whereby R. would sleep separate from his siblings. Mother also presented a "present danger plan" she asserted DCS put in place from June 13 to June 27, 2018, after Mother reported that R. was sexually abusing his siblings. Father testified that he did not know the safety plan existed until Mother mentioned it in a June 2018 email, and that he had never been advised of a present danger plan.

¶8        Third, Mother alleged Father had sexually assaulted her between September 2015 and June 2016. Mother reported these incidents to law enforcement in March 2018.

¶9        Fourth, Mother alleged Father emotionally manipulated R. Mother presented handwritten journal pages from R., which she contends illustrated that Father was attempting to convince R. that Mother hated him and his siblings and she didn't "like anyone except herself."

¶10        Lastly, Mother alleged Father failed to provide medical treatment to the second eldest child, who required immediate medical attention for a double ear infection after a visit with Father. Father asked the family court to dismiss Mother's underlying petition to modify parenting time.

¶11        After taking the matter under advisement, the family court denied Mother's June 2018 request to modify parenting time. Specifically, the court found modification of the existing parenting time order was not

warranted because Mother provided "insufficient evidence to establish a significant and continuing change of circumstances that materially affect[ed] the welfare of the [C]hildren." The court also granted Father's request for attorneys' fees and costs after finding Mother had "acted unreasonably in the litigation." Mother timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1)[1] and -2101(A)(2).

## DISCUSSION

### I. The Family Court Did Not Abuse Its Discretion In Denying Mother's Petition to Modify Parenting Time.

¶12        Mother disputes the family court's finding that she failed to show a material change in circumstances permitting a change in parenting time.[2] Specifically, Mother argues the court "mischaracterized" two of the exhibits that were admitted during the evidentiary hearing and should have proceeded to consider whether modification of parenting time was in the Children's best interests pursuant to A.R.S. § 25-403(A). However, when a party seeks to modify an existing legal decision-making or parenting time order, the family court must first determine whether there has been a material change in circumstances affecting the welfare of the child before it can engage in the best-interests analysis. *See Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15 (App. 2013) (citing *Black v. Black*, 114 Ariz. 282, 283 (1977)); *Owen v. Blackhawk*, 206 Ariz. 418, 422, ¶ 16 (App. 2003)

---

[1]        Absent material changes from the relevant date, we cite a statute's current version.

[2]        Father argues that we should not address the merits of Mother's appeal because she did not satisfy the statutory prerequisites to filing a petition to modify within one year of the original order. *See* A.R.S. § 25-411(A) ("A person shall not make a motion to modify a legal decision-making or parenting time decree earlier than one year after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may seriously endanger the child's physical, mental, moral or emotional health."). However, A.R.S. § 25-411(A) is procedural, not jurisdictional. *In re Marriage of Dorman*, 198 Ariz. 298, 302, ¶¶ 9-10 (App. 2000). And because Father did not object to Mother's noncompliance with A.R.S. § 25-411(A) through special action prior to a resolution on the merits, he has waived this claim on appeal. *Id.* at 302-03, ¶¶ 11, 14.

(quoting *Canty v. Canty*, 178 Ariz. 443, 448 (App. 1994)); *see also Vincent v. Nelson*, 238 Ariz. 150, 155, ¶¶ 16-18 (App. 2015). The court's determination whether a change in circumstances has occurred "will not be reversed absent a clear abuse of discretion, *i.e.*, a clear absence of evidence to support its actions." *Prigdeon v. Superior Court*, 134 Ariz. 177, 179 (1982) (citing *Smith v. Smith*, 117 Ariz. 249, 253 (App. 1977), and *Bailey v. Bailey*, 3 Ariz. App. 138, 141 (1966)); *see also Vincent*, 238 Ariz. at 155, ¶¶ 17-18.

¶13            "The trial court is in the best position to judge the credibility of witnesses, the weight of evidence, and also the reasonable inferences to be drawn therefrom." *Goats v. A. J. Bayless Mkts., Inc.*, 14 Ariz. App. 166, 171 (1971) (citing *Rogers v. Greer,* 70 Ariz. 264, 270 (1950), and *Cavazos v. Holmes Tuttle Broadway Ford, Inc.*, 104 Ariz. 540, 543 (1969)). We do not reweigh evidence on appeal, *Reek v. Mendoza*, 232 Ariz. 299, 303, ¶ 14 (App. 2013) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002), and *Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 86-87 (App. 1995)); rather, we view the evidence in the light most favorable to sustaining the court's findings and determine "whether evidence in the record reasonably supports" those findings. *Vincent*, 238 Ariz. at 155, ¶ 17 (citing *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009)).

¶14            First, Mother contends the family court mischaracterized the PCH psychiatric records that she offered to prove R. was sexually acting out after visits with Father. The court found that these records contained "no assessment of the cause of these behaviors" but rather contained only "summaries of information that it appears Mother gave [PCH psychiatrists] regarding her suspicions, i.e., that visits with Father are the cause of the behaviors." Mother claims the PCH records also included physician notes that documented R.'s personal interviews with treatment providers, illustrated R. was anxious and stressed about an upcoming visit with Father, and indicated possible verbal abuse of R. by Father.

¶15            Second, Mother disagrees with the family court's finding that R.'s handwritten journal pages were "the only evidence of Father speaking negatively about Mother to the [C]hildren." Rather, Mother argues PCH records also document reports from R. that Father not only called Mother names but was demeaning to the child, "calling him sissy." Further, Mother argues the court was "bias[ed]" in its examination of the handwritten journal exhibit because, before it admitted the journal pages into evidence, the court agreed with opposing counsel's objection that it was concerned Mother might be "coaching" R. to say certain things in the journal pages.

¶16 Despite Mother's contentions, we cannot say the family court abused its discretion in considering the PCH records or the handwritten journal pages. The entire record before the court, including the contested exhibits, contains reasonable evidence justifying the court's denial of Mother's petition to modify the parenting order due to her initial failure to show a change in material circumstances affecting the welfare of the Children. Mother's arguments on appeal amount to a plea for us to reweigh the evidence, a task we do not undertake on appeal. *See supra* ¶ 13.

¶17 The record reflects the family court carefully considered the evidence Mother presented and drew reasonable inferences therefrom based upon the court's wisdom and experience. For example, the court found Mother did not present any credible evidence, beyond the PCH records, connecting R.'s concerning behavior "to Father's parenting time." Indeed, the DCS records resulting from Mother's June 2018 report that R. was sexually abusing his other siblings "did not take place after Father's parenting time . . . [but] right before the summer vacation parenting time that Father was to exercise." Two other DCS records from November 2017, reporting allegations of physical abuse and neglect by Father, presented the same allegations Mother raised in connection with the original divorce decree in September 2017. And the court noted that DCS ultimately found these allegations unsubstantiated.

¶18 Mother's police report of spousal abuse committed in 2015 and 2016 was similarly unpersuasive to the family court. Although more recently made, the allegations of sexual assault by Father were the same allegations raised by Mother and addressed at the time of the original decree. Further, the police records indicated "that the prosecutor decided not to file any charges and closed the case."

¶19 Additionally, the family court considered a letter from a family consultant retained by Mother, who observed the Children in Mother's home during the evening for about four months. The court reiterated that the letter "d[id] not provide any credible evidence connecting the concerning behaviors of the eldest child to Father's parenting time." And while the court believed R.'s behavior was concerning and needed to be addressed by the parties, correspondence showed "Father agree[d] that [R.] need[ed] therapy or counseling" and was "willing to assist in the child obtaining needed treatment and medications."

¶20 Finally, to the extent Mother is asserting judicial bias based on the family court's examination of R.'s handwritten journal pages, the record does not support such a claim. We generally presume the family court is

both fair and impartial; therefore, "[a] party must show by a preponderance of the evidence that the judge was, in fact, biased." *Cook v. Losnegard*, 228 Ariz. 202, 206, ¶ 22 (App. 2011) (citing *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38 (App. 2005)). Mother has not established the existence of judicial bias, and our independent review of the record reveals none. To the contrary, the court admitted the handwritten journal exhibit, stating it would give it "the appropriate weight it's due." Therefore, after reviewing all the evidence while giving deference to the court's assessment, we find no abuse of discretion in the family court's denial of Mother's petition to modify parenting time.[3]

## II. The Family Court Did Not Abuse its Discretion in Awarding Father Attorneys' Fees.

¶21 Mother argues the family court erred by awarding Father attorneys' fees pursuant to A.R.S. § 25-324(A), which authorizes the court to award attorneys' fees to a party for the costs of maintaining or defending any proceeding in court "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." We review an award of attorneys' fees made under A.R.S. § 25-324(A) for an abuse of discretion. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 286, ¶ 29 (App. 2019).

¶22 Section 25-324(A) authorizes the family court to award attorneys' fees to a party for the costs of maintaining or defending any proceeding in family court "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." In support of its decision to award fees to Father, the court found that while he had significantly greater financial resources than Mother, Mother had acted unreasonably throughout the litigation in (1) "denying Father his parenting time, forcing him to have to file a petition to enforce that time," and (2) "basing her petitions, at least in part, upon actions that took place prior to and were considered [with]in the [parties' divorce] [d]ecree." Although Mother disputes the court's characterization of her actions as unreasonable, the record supports its

---

[3] Father argues we should affirm the family court's decision on other grounds. But, we may "affirm a trial court on any basis supported by the record." *Leflet v. Redwood Fire & Cas. Ins.*, 226 Ariz. 297, 300, ¶ 12 (App. 2011) (quoting *Solimeno v. Yonan*, 224 Ariz. 74, 82 (App. 2010)). Because we find the court's finding that Mother failed to prove a substantial and continuing change warranting modification was not an abuse of discretion, we need not and do not reach Father's argument.

findings and provides a sufficient factual basis to impose an award under A.R.S. § 25-324(A). Accordingly, we affirm the award of attorneys' fees to Father, and deny Mother's request for reimbursement.

**CONCLUSION**

¶23　　　　The family court's orders are affirmed.

¶24　　　　Father requests an award of attorneys' fees incurred on appeal pursuant to A.R.S. §§ 12-349, 25-324, and ARCAP 21 and 25. In our discretion, we deny his request. We also decline to impose sanctions upon Mother's appellate counsel pursuant to ARCAP 25; although Mother's appeal was ultimately unsuccessful, the record does not indicate it was "frivolous" or "filed solely for the purpose of delay." However, as the prevailing party, Father is awarded his costs incurred on appeal upon compliance with ARCAP 21(b). *See* A.R.S. § 12-341.



AMY M. WOOD • Clerk of the Court
FILED:　AA