NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BROOK LYNN JOHNSON, *Petitioner/Appellant*,

*v.*

GREGORY SEAN ESPINOZA, *Respondent/Appellee*.

No. 1 CA-CV 19-0426 FC
FILED 7-14-2020

Appeal from the Superior Court in Maricopa County
No. FC2016-007709
The Honorable Justin Beresky, Judge

**AFFIRMED**

COUNSEL

Corl Law Practice, P.L.L.C., Maricopa
By Robert D. Corl
*Counsel for Petitioner/Appellant*

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop[1] delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

**W I N T H R O P**, Judge:

¶1 Brook Lynn Johnson ("Mother") appeals the family court's post-judgment order modifying legal decision-making authority and parenting time as to her child, born in 2014 ("Child"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In September 2016, the State brought an action to establish a child support obligation for Gregory Sean Espinoza ("Father").[2] The family court ordered the child support obligation in November 2016, after Father's paternity was established by voluntary acknowledgment. Ariz. Rev. Stat. ("A.R.S.") § 25-812.

¶3 In December 2016, Father filed a petition to establish legal decision-making authority and parenting time for Child and to modify the child support obligation set in November 2016. In July 2017, the family court—after holding an evidentiary hearing and considering Child's best interests—awarded Mother and Father joint legal decision-making authority over Child. In its best-interests analysis, the family court noted that "Mother d[id] not seem very interested in Father being involved in [Child]'s life" because up until this point "Father had limited contact with [Child] since his birth." Nonetheless, the court recognized that Father sought a "closer relationship with [Child] and d[id] not want to hinder any relationship between Mother and [Child]." But, "[a]s a result of the limited

---

[1] Judge Winthrop replaces the Honorable Kenton D. Jones, who was originally assigned to this panel. Judge Winthrop has read the briefs and reviewed the record.

[2] Father did not file an answering brief. Although we could regard this failure as a confession of error, *see* ARCAP 15(a)(2); *Thompson v. Thompson*, 217 Ariz. 524, 526, ¶ 6 n.1 (App. 2008), in our discretion, we decline to do so. *See Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994).

amount of contact Father [] had with [Child]," the court implemented an eight-week transition period, after which the parties were to share equal parenting time. The court entered these orders after considering Mother's "assert[ion that] Father's girlfriend assaulted Mother[,] and [that] Father was involved in the assault."

¶4 More than a year later, Mother filed a petition to modify legal decision-making authority, parenting time, and child support. She also filed a motion for post-decree temporary orders without notice, alleging, in pertinent part, that Child had witnessed Father and his girlfriend assaulting Mother during a parenting-time exchange. The family court dismissed the petition and motion, noting it had already "addressed the prior domestic violence issue between Mother, Father, and Father's girlfriend at the time the [July 2017] orders were entered."

¶5 In the months that followed, Mother and Father filed various petitions and motions concerning custody of Child. Relevant here, in December 2018, Father filed a motion for post-decree temporary orders without notice, as well as a petition to modify legal decision-making, parenting time, and child support, requesting he be granted sole legal decision-making authority and physical custody of Child and that Mother's parenting time be supervised. Mother responded with a competing petition and motion for temporary orders, in which she alleged "[Father] and about 3 cars full of people" drove to her house, banged on her doors, and attempted to open her windows and that Father's girlfriend was "sexually and physically" abusing Child. After a January 2019 hearing, the court entered temporary orders awarding the parties joint legal decision-making authority and equal parenting time.

¶6 In April 2019, after holding an evidentiary hearing on Mother's December 2018 petition and taking the matter under advisement, the family court found Mother's allegations of child abuse by Father's girlfriend were not credible and were made to frustrate Father's relationship with Child. The court found that Mother's continued pursuit of these allegations constituted a "sufficient material change in circumstances" affecting Child's welfare. In its best-interests analysis, the court characterized the parties' lack of agreement over custody of Child as "unreasonable," and further noted that the parties "exhibited little ability to cooperate," that "Mother ha[d] attempted to mislead the [c]ourt," and that "[g]iven the overall circumstances, joint legal decision-making [wa]s not logistically possible." Specifically, the court found:

3

Time after time Mother has attempted to block Father's parenting time. First, when the parties were awarded equal parenting time with the child, Mother absconded . . . to California for seven months with the child. When Father discovered Mother's whereabouts, the parents came to an agreement to exercise equal parenting time. Mother has made repeated claims [of] abuse to [the Department of Child Safety ("DCS")] [] in an attempt to keep the child from Father. Mother has alleged Father's girlfriend physically abused the child by hitting him and squeezing his arms, causing bruising. Mother then alleged Father's girlfriend sexually abused the child. Mother obtained an injunction against harassment against [F]ather's girlfriend which was ultimately dismissed after a hearing. Mother kept the child from Father for approximately thirty days without lawful authority until a hearing [in January 2019]. Mother's allegations regarding sexual abuse by Father's girlfriend appear to have been from Mother or someone else coaching the child. The Court Appointed Advisor, the Best Interests Attorney and this Court are all of the opinion that the Child's alleged statements are highly suspect and likely the result of the child being coached. Even when Mother took [t]he child to counseling, the counseling consisted of Mother telling the child to tell the counselor what he said previously.

Based upon these considerations, the court awarded Father sole legal decision-making authority over Child.

¶7　　　　The family court then set forth a detailed parenting time plan that ensured Mother would have "substantial, frequent, meaningful and continuing contact with [her] child," *see* A.R.S. § 25-403.01(D), and that was "practical" and "maximize[d]" each parent's parenting time to the extent it was in Child's best interests. The plan specified:

> Until the child begins school (presumably in August 2019), the parents shall follow the same parenting time schedule as set forth in the August 13, 2018 Minute Entry. Once the child begins school the child will live primarily with Father. Mother shall have parenting time from Friday after school until Sunday at 6:00 p.m. for two consecutive weekends, then Father will keep the child the third weekend. The parents will exercise this 2/weekend at Mother['s] followed by one weekend at Father's during the school year. Over [s]ummer

4

break the parties will revert back to the equal time parenting plan. This schedule assumes Mother still lives in [A]pache Junction, approximately 45 minutes from Father and the child's school. Should Mother move significantly closer to Father the parents should revert back to equal parenting time assuming Mother is able to get the child to school on time.

¶8 Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(2).

**ANALYSIS**

*I. Substantial and Continuing Change*

¶9 Mother initially argues the family court erred "in concluding that Mother's allegations of sexual abuse by Father's girlfriend constituted a material change in circumstances affecting the welfare of the Child."

¶10 Under Arizona law, when a party seeks to modify an existing legal decision-making or parenting time order, the family court must first determine whether there has been a material change in circumstances affecting the welfare of the child before it can engage in the best-interests analysis. *Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15 (App. 2013) (citing *Black v. Black*, 114 Ariz. 282, 283 (1977)); *Owen v. Blackhawk*, 206 Ariz. 418, 422, ¶ 16 (App. 2003) (quoting *Canty v. Canty*, 178 Ariz. 443, 448 (App. 1994)); *see also Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 17 (App. 2015) (quoting *Canty*, 178 Ariz. at 448). The court's determination as to whether a change in circumstances has occurred "will not be reversed absent a clear abuse of discretion, *i.e.*, a clear absence of evidence to support its actions." *Prigdeon v. Superior Court*, 134 Ariz. 177, 179 (1982) (citing *Smith v. Smith*, 117 Ariz. 249, 253 (App. 1977) and *Bailey v. Bailey*, 3 Ariz. App. 138, 141 (1966)).

¶11 Mother points to evidence in the record that she presented to the family court, namely photographic evidence allegedly demonstrating physical abuse of Child by Father's girlfriend and Mother's own testimony that Child had previously admitted to being inappropriately touched by Father's girlfriend to a DCS investigator. The family court apparently did not find this evidence persuasive, and we will not second-guess its evaluation of Mother's credibility. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 (App. 2019) ("On appeal, we do not reweigh the evidence but defer to the family court's determinations of witness credibility and the weight given to conflicting evidence.") (citing *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998)). Sufficient evidence exists to support the court's findings that Mother repeatedly made false or questionable allegations of

child abuse in an attempt to block Father's parenting time with Child and that these circumstances constituted a material change affecting Child's welfare. Accordingly, we find no error.

## II.    *Legal Decision-Making Authority*

**¶12**        Mother argues the family court erred in awarding sole legal decision-making authority of Child to Father. Mother is specifically dissatisfied with the court's examination and resolution of several best-interests factors identified within A.R.S. § 25-403(A).

**¶13**        We review an order modifying legal decision-making authority for an abuse of discretion. *See DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019) (citing *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018)). "The trial court is in the best position to judge the credibility of witnesses, the weight of evidence, and also the reasonable inferences to be drawn therefrom." *Goats v. A.J. Bayless Mkts., Inc.*, 14 Ariz. App. 166, 171 (1971) (citing *Rogers v. Greer*, 70 Ariz. 264, 270 (1950) and *Cavazos v. Holmes Tuttle Broadway Ford, Inc.*, 104 Ariz. 540, 543 (1969)). Thus, we do not reweigh evidence on appeal, *Reek v. Mendoza*, 232 Ariz. 299, 303, ¶ 14 (App. 2013) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002) and *Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 86-87 (App. 1995)); rather, we view the evidence in the light most favorable to sustaining the court's findings and determine "whether evidence in the record reasonably supports" those findings. *Vincent*, 238 Ariz. at 155, ¶ 17 (citing *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009)). Reviewing each factor raised by Mother, we find no error.

**¶14**        Section 25-403(A)(1) directs the family court to consider "[t]he past, present and potential future relationship between the parent and the child." The court here found that Child "seem[ed] to be well-bonded with both parents." Mother asserts the finding is unsupported by the evidence because it "completely ignore[s] the fact that Child was raised exclusively by Mother for the first two and a half years of his [by-]then three year old life until Father was ordered to pay [c]hild support." The record reflects, however, that the court had previously acknowledged Father's "limited contact" with Child, *see supra* ¶ 3, but nevertheless found equal parenting time appropriate back in July 2017. Mother also admitted to the court that: "things have been going pretty good," Child had not "been crying" and seemed "excited to see his dad lately," she had noticed Father and Child "bonding some" which made her "happy," and she wanted Child "to have a relationship with . . . [Father]."

¶15 Section 25-403(A)(2) directs the family court to consider "[t]he interaction and interrelationship of the child with the child's parent or parents, the child's siblings and any other person who may significantly affect the child's best interest." Mother argues the "court completely ignored the fact that placing Child with Father put[] him almost exclusively within the care of Father's girlfriend due to his work schedule," which she contends is not in Child's best interests because, according to Mother, Father's girlfriend "had already lost custody of her own biological child most likely due to mental health issues." The record reflects that although Mother obtained an injunction against harassment against Father's girlfriend after noticing bruises on Child's arm, the injunction was dismissed after a hearing. Moreover, the court-appointed advisor testified she had no evidence to say Child was being abused in Father's home. The record further reflects that Father's girlfriend voluntarily gave up a child at birth approximately eleven years ago because she felt allowing her brother to adopt would provide the child better opportunities. These circumstances do not suggest that Father's girlfriend is currently an inappropriate caregiver to Child.

¶16 Section 25-403(A)(5) directs the family court to consider "[t]he mental and physical health of all individuals involved." Mother contends the family court "completely ignored" this factor, "particularly with respect to Father's girlfriend." To the contrary, the court here found there was "[n]o *credible* evidence presented" on this factor—a finding that is well within the court's discretion to make, *see supra* ¶ 11. (Emphasis added.)

¶17 Section 25-403(A)(6) directs the family court to consider "[w]hich parent is more likely to allow the child frequent, meaningful and continuing contact with the other parent." Mother argues the court's finding that she had acted deliberately to thwart Father's relationship with Child, *see supra* ¶ 6, is not supported by the record. We disagree. First, the record reflects Mother admitted to absconding with Child to California for seven months in 2017. She also admits on appeal that she kept Child from Father for an additional thirty days, without lawful authority, before the January 2019 hearing on temporary orders.[3]

---

3 To be sure, as Mother contends on appeal, the record likewise reflects Father withheld Child from Mother for some period of time beginning in January 2018, but he apparently "did so because he fear[ed] Mother w[ould] flee to C[alifornia] again once she [got] the child back."

¶18 Mother also asserts the family court's finding that she has made repeated claims of abuse to keep Child from Father is based on the superior court's "opinion, not evidence." We again disagree. The family court previously resolved the issues surrounding the alleged assault of Mother by Father's girlfriend in the course of its initial custody and parenting time orders. Yet, Mother continued to repeat the allegation. The court also noted the dismissal of Mother's injunction against Father's girlfriend for harassment related to allegedly abusing Child. This supports the court's finding that Mother has continued to make stale and/or unsubstantiated claims of child abuse in an attempt to keep Child from Father.

¶19 Further, the family court's finding that "Mother's allegations regarding sexual abuse by Father's girlfriend appear to have been from Mother or someone else coaching the child" is supported by the court-appointed advisor's testimony. The advisor expressed concerns with Mother's involvement in Child's therapy sessions—sessions the advisor believed Child did not need—where "Mother [wa]s actually telling the child to tell the therapist what the child ha[d] told Mother," rather than encouraging Child to tell the therapist, in his own words, what had happened.

¶20 In sum, we cannot say the record is devoid of evidence reasonably supporting the family court's findings.[4] The court's findings are sufficient to support its decision to award Father sole legal decision-making authority.

---

Regardless, Father's conduct is not relevant to whether Mother acted deliberately to interfere with his relationship with Child.

[4] Mother also argues A.R.S. § 25-411(L) requires the facts necessary to support a change in legal decision-making authority and parenting time be contained in an affidavit or verified petition. That statute, however, "is a prehearing procedural statute and its purpose is, in part, to prevent repeated or insubstantial motions for modification." *In re Marriage of Dorman*, 198 Ariz. 298, 302, ¶ 11 (App. 2000) (internal quotation and citations omitted). Once the family court holds an evidentiary hearing, "the time for achieving the statute's intended protections . . . has passed," and the court may thereafter rely on the evidence and testimony presented in making its decision regarding legal decision-making and parenting time. *Id.*

¶21 Nor does the record support Mother's assertion of judicial bias based upon the family court's determination that "Mother has attempted to block Father's parenting time." "A trial judge is presumed to be free of bias and prejudice." *Cook v. Losnegard*, 228 Ariz. 202, 206, ¶ 22 (App. 2011). Therefore, "[a] party must show by a preponderance of the evidence that the judge was, in fact, biased." *Id.* (citing *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38 (App. 2005)). Mother has failed to establish the existence of any judicial bias, and our independent review of the record reveals none.

### III. Parenting Time

¶22 Mother argues the family court erred when it modified her parenting time without making the requisite findings under A.R.S. § 25-411(J). That section states:

> The [family] court may modify an order granting or denying parenting time rights whenever modification would serve the best interest of the child, but the court shall not *restrict a parent's parenting time rights* unless it finds that the parenting time would endanger seriously the child's physical, mental, moral or emotional health.

A.R.S. § 25-411(J) (emphasis added). We review an order modifying parenting time for an abuse of discretion but review "the interpretation of statutes *de novo*." *See DeLuna*, 247 Ariz. at 423, ¶ 9 (citing *Engstrom*, 243 Ariz. at 471, ¶ 4).

¶23 Mother characterizes the parenting time schedule designed by the court as a "restriction" that should have triggered additional findings pursuant to A.R.S. § 25-411(J). The term "restrict" is not defined by A.R.S. § 25-411, but we look to the entire phrase and, accordingly, read the limitation upon the family court's power to "restrict a parent's parenting time *rights*" as referring to the *manner* in which parenting time is exercised—such as via supervision or in the instance where parent and child are in different states. *See, e.g.*, *Hart v. Hart*, 220 Ariz. 183, 187, ¶ 16 (App. 2009) (concluding the finding of serious endangerment in what is now A.R.S. § 25-411(J) was a necessary prerequisite to ordering supervised parenting time). Here, however, the mere reduction in Mother's parenting time hours during the school term, consistent with Child's best interests, did not amount to a "restriction" of her parenting time rights. Thus, specific A.R.S. § 25-411(J) findings were unnecessary, and the court had discretion to modify parenting time consistent with Child's best interests upon considering the factors contained in A.R.S. § 25-403(A). *See* A.R.S. § 25-

411(J) (authorizing the family court to modify parenting time "whenever modification would serve the best interest of the child"); A.R.S. § 25-403(A) ("The court shall determine . . . parenting time, either originally or on a petition for modification, in accordance with the best interests of the child.").

**¶24**     Moreover, as set forth in detail in Section II, the court's best-interests findings and decision to modify parenting time are more than adequately supported by the record.  Mother made repeated allegations of physical and sexual abuse by Father's girlfriend, which allegations the court found were not credible and represented an attempt to keep Child from Father and to deliberately mislead the court.  In addition, the court found Mother attempted to block Father's parenting time both when she absconded with Child to California for seven months and later when she unlawfully kept Child from Father for an additional thirty days.  The record also reflects Mother unilaterally initiated counseling therapy for Child when—as the court-appointed advisor testified—there was no evidence indicating Child needed such therapy.  Finally, the court also appropriately considered the practical implications of Child's living arrangement in adjusting parenting time, including the forty-five-minute drive from Mother's house to Father's, Child's school location and schedule, and Mother's ability to get Child to school on time.  On this record, the court did not abuse its discretion in adjusting parenting time.

## CONCLUSION

**¶25**     The family court's orders are affirmed.

**¶26**     Mother requests an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 25-324(A), (C).  In our discretion, we deny her request.



AMY M. WOOD • Clerk of the Court
FILED:    AA